CLOVER CONDENSED MILK CO. v. CUSHMAN BROS. CO.

(Supreme Court, Appellate Division, First Department. June 24, 1898.)

1. AGENCY—TERMINATION BY NOTICE.
   If a contract creating a sales agency provides for its termination by either party upon a specified notice, an explicit and unequivocal notice duly given by the principal is not waived or withdrawn by the mere fact that after the specified period has expired he continues to sell through the agent, without any new express arrangement.

2. SAME—TERMS.
   If a proposition to act as sales agent for another, on specified terms, and for a period of one year, in several distinct territories, is rejected, the fact that the proposed principal subsequently accepts an offer of the same party to act as sales agent in one of those territories, without specifying the term of the employment, does not imply that it is to continue for the period named in the original proposition.

Appeal from judgment on report of referee.

Action by the Clover Condensed Milk Company against the Cushman Bros. Company. Judgment for plaintiff on report of referee, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

Joseph F. Darling, for appellant.
Samuel A. Noyes, for respondent.

INGRAHAM, J. This action was brought to compel the defendant to account for sales of merchandise consigned to it as the selling agent of the plaintiff, and has resulted in a judgment in favor of the plaintiff against the defendant for the sum of $1,359.37. The amount due by the defendant to the plaintiff was not disputed. The defendant, however, set up as a counterclaim the damages sustained by a breach of two contracts, whereby the plaintiff employed the defendant to act as its selling agent for a period named. It appears that there were two contracts between the plaintiff and the defendant, the first of which was dated March 30, 1894, whereby the defendant was ap-

pointed the sole agent of the plaintiff in the cities of New York, Brooklyn, Jersey City, and Hoboken, the plaintiff agreeing to pay the defendant a salary of $30 per week, and 3 per centum on all sales made to the wholesale and retail trade, with an additional commission for collecting from the retail trade on all bills not discounted, and for deliveries. This contract contained the further provision that if at any time "either party to this agreement shall become dissatisfied, or wish to terminate this agreement, the same may be done by either party giving three (3) months' notice to the other party, and this agreement or agency shall terminate after the expiration of said three (3) months." The other contract which it is claimed was broken, was known as the Pennsylvania contract, by which the defendant was to act as the agent of the plaintiff in the state of Pennsylvania, except the cities of Pittsburg and Allegheny, for a period of one year from the 28th day of February, 1896, at a salary of $35, payable monthly, and a commission on all sales. It seems that the parties proceeded under the New York contract until September 7, 1894, when the plaintiff wrote to the defendant a letter, stating dissatisfaction with the sales in New York, and canceling the contract, under the right reserved to either party, by the following express notice:

"According to our contract, we hereby cancel our contract with you, the same to expire in three months, viz. December 7th, 1894. We feel, under all the circumstances, that we wish to clean up, and see where we stand."

The letter also contained the following clause:

"In canceling our contract we do not say that we would not renew after January 1st. We simply propose cleaning up, and see where we stand, and how things have panned out, and then judge whether to go ahead again, or to stop the N. Y. altogether. If we continue, we want to do so on a much larger scale."

This letter, therefore, was an express cancellation of the contract then existing, with a statement that after January 1st, if they continued to do business, it would be under some different arrangement. There is no evidence to show that this notice was ever retracted, or that the plaintiff did anything to withdraw it. The secretary and treasurer of the plaintiff testified that the plaintiff dealt under the contract from the early part of March, 1894, to September, 1894, and that from September, 1894, to March 20, 1896, the plaintiff transacted business partly with Cushman Bros. and partly with Cushman Bros. Company; that up to March 20, 1896, the plaintiff was shipping milk to the defendant, and that the defendant was making returns to the plaintiff as the plaintiff's agent. But there is nothing in the action of the parties, or in any of the correspondence between them, after September 7, 1894, that recognized the existence of the old contract. The plaintiff did continue to ship goods to the defendant, and the defendant continued to sell them, but the contract itself was abrogated by this notice, which was never withdrawn. The referee, therefore, was clearly right in holding that there was no breach of this contract of 1894.

As to the Pennsylvania contract, we think it is quite clear that there was no agreement that it should continue for any particular

time.   The negotiations from which this contract resulted appear to have been commenced by a letter dated January 28, 1896.   By that letter the defendant proposed to the plaintiff to extend the business into Boston and New England, Buffalo, New York state, and Philadelphia and Pennsylvania, and to represent the plaintiff in these markets, fixing a certain compensation to be paid it for the services; and that the arrangement should go into effect on March 1st, and continue for one year.   To that the plaintiff replied, by a letter dated January 30, 1896, in which was stated:

"We cannot at present accept your offer, and we would not advise you to let a good opportunity slip by to arrange with others, not knowing for certain if we will ever join you in the other departments or not."

After some other correspondence, on February 18, 1896, the defendant made a new proposition, by which, after reciting the fact that they had employed a Mr. Whaley, who had been recommended to them by the plaintiff, they proposed that the defendant should begin selling on the Philadelphia territory and Pennsylvania circuit on March 1st, saying:

"We are convinced that Mr. Whaley would make a success of your account, as well as the others that we shall handle, and you would have the special advantage at the start in that the number of lines he shall carry will be very limited.   The salary for that territory would be $35 per month only, and 5 per cent. commission on the sales, and, if that proved a success, you could add the other two territories recently mentioned by us."

This, it will be seen, is an entirely new and different proposition from that contained in the letter of January 28th.   From its nature, it was to be temporary, with the proposal to add the other two territories if this experiment of extending the business should prove a success.   In answer to this the plaintiff said:

"We do not wish to increase our expenses, yet there are peculiar circumstances in connection with Mr. Whaley and our recommendation of him that make us wish him success. * * * And you may consider us as having accepted your proposition of $35 per month and 5 per cent. on condition that you waive the market of Pittsburg and Allegheny.   We have an agent there now."

In reply to this letter, the defendant wrote to the plaintiff on February 26th, in which it speaks of the plaintiff's letter of the 20th, and accepts the condition as to the exclusion of Pittsburg and Allegheny. In neither of those letters upon which the contract was finally made was there any express reference to the letter of January 28th, but it is clear that this was a new proposition, after that contained in the letter of January 28th had been declined, which was not to be continued for any particular time, and which was necessarily subject to be discontinued at the option of either party.   On March 14, 1896, the plaintiff wrote to the defendant, saying that, as the defendant had failed to make returns for goods shipped to it, it canceled all contracts between the parties, to take effect on the 1st of April, which advice was confirmed by a letter of March 18th.   It is quite clear that this contract as made was based upon the letter of February 18, 1896, and the reply thereto of February 20th.   In it there is no agreement that the contract should last one year, or any particular time,

and either party had a right to terminate it at any time. We think, therefore, that the referee was entirely right in holding that there was no breach of either of the contracts by the plaintiff, and that the defendant was not entitled to recover damages.

The judgment is affirmed, with costs. All concur.