UNITED STATES ALUMINUM CO. v. CALVERT LITHOGRAPHING CO.

(Supreme Court, Appellate Term. February 27, 1906.)

CONTRACTS—CONSTRUCTION—TERMINATION.

> A contract provided that defendant should pay plaintiff $150 per year for each rotary press on which it shall use aluminum in any way, being a total of $300 a year, and licensed defendant to use the inventions and processes in question "on the power presses described below, and on no others." It specifically described the presses on which the license was granted as "two rotary litho presses." The contract also contained a condition that the licensee, on giving certain notice and paying "all sums due to the licensors," might terminate the contract. *Held*, that defendant by paying the amount due for the two presses was entitled to terminate the contract, notwithstanding he was liable to plaintiff for the unauthorized use of the inventions on other presses.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by the United States Aluminum Company against the Culvert Lithographing Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before SCOTT, P. J., and GIEGERICH and GREENBAUM, JJ.

Smith & Martin (Yorke Allen and Louis Dean Speir, of counsel), for appellant.

Richard T. Greene, for respondent.

GIEGERICH, J. I think the trial court was right in its disposition of this case. The contract provided that the defendant should pay "$50 a year for each flat bed press and $150 per year for each rotary press on which it shall use aluminum in any way, being a total of $300 per year." The contract is made on a printed form, which in its original condition contained various blank spaces to be filled in, among others the space in which the total of $300 was written in ink. Further down in the contract, in another blank space, the presses "on which the license was granted" are specifically described as "two (2) rotary litho presses, manufactured by the Aluminum Plate & Press Company." The contract also contains a condition that the licensee, "on giving the licensors at least two months' notice in writing to pay all sums due to the licensors," may terminate the contract. Such notice was given, and no claim is made that any part of the annual royalty of $300, reserved in the license, remained unpaid at the time such notice was given. It is claimed, however, that the defendant, at the time when the notice

was given, was using aluminum plates or presses other than the two specifically described, and owed the plaintiff for such use, and therefore was not in position to give notice of termination. This contention seems to be placed chiefly upon the argument that the contract provision for the payment of "$150 per year for each rotary press on which it [the defendant] was using aluminum in any way" is not limited to the two presses specifically mentioned and licensed in the contract, but is broad enough to cover any additional number. Such a claim is inconsistent, not only with the portion of the contract above quoted, but also with another portion, where it is expressly stated that the defendant is licensed to use the inventions and processes in question "on the power presses described below, and on no others." From this it is manifest that neither party could claim that the contract was intended to cover more than the two presses described.

It may be that the defendant was liable in some unliquidated amount for the unauthorized use of the inventions and processes on other presses, but I do not think the contract intended that the licensee's right to give notice of termination was to depend on the payment to the plaintiff of all amounts due for such infringements. Such amounts would not be due from a licensee to a licensor, but from an infringer to the patentee. All sums due under the license having been concededly paid at the time the notice to terminate was given, said notice was effective, and terminated the contract.

The judgment should be affirmed, with costs. All concur.