ANNA KLEVE, Plaintiff, *v.* BASLER LEBENS-VERSICHERUNGS-GESELLSCHAFT IN BASEL, Defendant.

KATHE WARISCH, Plaintiff, *v.* BASLER LEBENS-VERSICHERUNGS-GESELLSCHAFT IN BASEL, Defendant.

Supreme Court, Trial Term, New York County, December 24, 1943.

*Leo H. Hirsch* for plaintiffs.

*Chester Bordeau* and *William J. Killoran* for defendant.

PECK, J. These two cases were tried together and present the same questions. They are actions brought by beneficiaries for the surrender value of life insurance policies written in

Germany upon the lives of German nationals by the defendant, a Swiss insurance company. The actions were instituted here by attachment of the defendant's funds in New York City.

The issues are raised by four defenses asserted in the answer: (1) that it is a condition of payment under the policies that the policies be presented to the defendant at its branch in Berlin with a writing requesting payment and the receipt for the last paid premium and that the defendant never received any request for payment in Berlin and never received the policies or premium receipt; (2) that the policies are governed by German law and under German law the plaintiffs are not entitled to payment because the plaintiffs are Jews who have taken up permanent residence abroad, with the consequence that their property has been confiscated by the German Government and defendant has been compelled to pay to the German Government the amount of the surrender value of the policies in discharge of the defendant's obligation to the plaintiffs; (3) that under German law no remittances of funds may be made from Germany to the United States without the consent of the German Government and no such consent has been granted; (4) that under German law the defendant was required to maintain cash reserves in Germany in order to protect policies issued in Germany by its German branch and from which reserves the policies were required to be paid.

Demand for payment was made in a radiogram sent February 26, 1942, by the plaintiffs in New York to the defendant at its home office in Basel, Switzerland, asking that payment be sent to New York.

It is stipulated that no demand for payment was ever made at the Berlin branch of the defendant, that the plaintiffs never presented the policies or last premium receipt, that the policies were issued to German nationals in Germany, and that the plaintiffs are Jews who left Germany in 1935 with the purpose of residing permanently abroad; that some time between the time when demand was made for the cash surrender value of the policies and the commencement of these actions in June, 1942, the German Government seized from the defendant, at its Berlin branch, pursuant to German law, sums of money representing the cash surrender value of the policies.

In order to reduce the case to what the court regards as the turning point, namely, the second defense, the other defenses will be briefly disposed of before considering the second defense.

Without passing upon the validity of the first defense as an abstract proposition, it is sufficient to say that the defendant's rejection of the plaintiffs' claim was not based on the failure of the plaintiffs to observe the formalities set forth in the first defense, but was based on substantive grounds, principally that the policies had been forfeited to the German Government. This rejection on substantive grounds waived any formal defects in the presentation of the claims. (*Sherri* v. *National Surety Co.*, 243 N. Y. 266, 272.)

The third and fourth defenses are insufficient because the defendant could have made payment from funds outside of Germany and it is, therefore, immaterial that German law does not permit the remittance of funds from Germany to the United States and that the defendant was required to maintain reserves in Germany to insure payment of the policies.

The second defense raises the determining issue, that is, whether the German law providing for the confiscation of the plaintiffs' assets, under which the defendant was required to pay the cash surrender value of these policies to the German Government in discharge of the defendant's obligation to the plaintiffs, is a bar to these actions.

The plaintiffs contend that the policies gave them an option as to the place at which they might demand payment, and that in pursuance of that option they made demand for payment in Switzerland and therefore Swiss law, rather than German law, governs in this case. The plaintiffs rely on the general rule that the law of the place of performance governs the performance of a contract and that where one party has an option as to the place of performance, the law of the place at which that party demands performance governs. (*Pan-American Securities Corp.* v. *Krupp Aktiengesellschaft,* 169 Misc. 445, affd. 256 App. Div. 955.)

The policies provide as to the place of performance — " Place of settlement for both parties are the offices of the branch of the Gesellschaft in the Reich territory ". The plaintiffs' claim to an option as to the place of performance rests upon the provision in the policies that " On request, the amount due will be sent to the entitled person at his expense, after previous presentation of the receipt. The means have to be determined by the company ".

The plaintiffs try to make too much of this provision of the policies. If the policies really provided alternative places for payment, Germany or Switzerland, as the bond in the *Krupp* case (*supra*) provided for payment in Germany or

Holland, the plaintiffs' position would be perfectly sound. But the policy clause relied upon by the plaintiffs will not support such an interpretation. The policies unequivocally state that the place of settlement for both parties shall be the offices of the defendant in Germany and then, as a matter of convenience, provide that the amount due will be sent to the payee. This certainly does not mean that the place where demand is made becomes the place of performance.

If there is any logic in the plaintiffs' contention that this clause in the policies gives the payee an option as to the place of performance, it would mean that the place to which the payee asks the money to be sent would become the place of performance. That would give the plaintiffs a world-wide option as to place of performance and controlling law. Clearly these policies do not have that intent or effect and the plaintiffs do not suggest that they have or plaintiffs would contend that American law governs here. But certainly there is no basis in the policies for contending that Switzerland could be made the place of performance by addressing a demand for payment to be sent to New York.

Assuming, however, that there is merit in the plaintiffs' contention as to the place of performance, the governing law in this case cannot be determined on so simple an expedient as determining the place of performance. Indeed, that is neither the exclusive nor controlling consideration in determining the governing law. Our courts recognize that it is the intention and agreement of the parties which are controlling. (*Dougherty* v. *Equitable Life Assurance Society*, 266 N. Y. 71.)

The place of performance may be an important consideration in determining the intention of the parties and, in the absence of other indications of intention, may be the determining factor, but the search for controlling law is not addressed merely to determining the place of performance, but is addressed to the intention of the parties. As stated by Professor Lorenzen: "If the parties have not expressed themselves regarding the law that shall determine the extent of their rights, duties, etc., their intention may appear from the terms of the contract in the light of surrounding circumstances. However expressed, the actual will of the parties controls." (Validity and Effects of Contracts in the Conflict of Laws, 31 Yale L. J. 54.)

What was the intention of the parties here as it appears from the terms of the contract and surrounding circumstances?

The policies were written in Germany on the lives of German nationals and were payable in Germany. While originally the

were expressed as payable in Swiss francs and the premiums were paid in Swiss francs, the parties yielded in 1935, as they realized they had to do, to the German law requiring that all future payments, both of premiums and proceeds, be made in German marks. Finally, the policies provide that the proper venue for litigation resulting from the insurance contract will be the German courts.

The plaintiffs make the sound observation in regard to the last-mentioned provision that our courts will not recognize a venue clause which ousts our courts of jurisdiction. (*De Gorter* v. *Banque de France,* 176 Misc. 1062, affd. 262 App. Div. 997.) But that does not mean that such a venue clause should not be heeded as an indication of the parties' intention as to governing law. There is no appreciable difference between the clause here and the clause in *Appel* v. *New York Life Ins. Co.* (285 N. Y. 629), where the clause read: " In all cases of disagreements and actions brought by the insured the Company shall abide by the decision of the Russian judicial tribunals ", and the court held that it was the intention of the parties that the policy be governed by Russian law.

Reading all the provisions of these policies together and regarding the surrounding circumstances and the necessary treatment of the policies during their life as subject to German law, there is no question but that the parties intended German law to govern and that, perforce, German law did govern. And now we have the fact that the German government has exercised its jurisdiction over these policies and over the funds maintained by the defendant in Germany to pay the policies and has appropriated payment to itself and declared the obligation of the defendant under the policy discharged.

The plaintiffs assert that because they have been able to secure jurisdiction over property of the defendant here by attachment they should be entitled to recover and that our courts should not recognize, or enforce as the plaintiffs put it, the obnoxious German decrees. The principal authority relied upon by the plaintiffs is *Buxbaum* v. *Assicurazioni Generali* (33 N. Y. S. 2d, 496, affd. 264 App. Div. 855).

It was held in the *Buxbaum* case that, in the absence of inconsistent governing law, it was proper to request payment here and payment could be had here. This case is no support, however, for the plaintiffs' contention, even assuming as we do that request for payment was properly made outside of Germany, that German law does not govern payment.

As stated by our Court of Appeals in the *Dougherty* case (266 N. Y. 71, 81, *supra*): " * * * we understand this to

mean that the defendant may pay its assured wherever the assured might be found. But this does not mean that its obligations are to be determined by the law of the country where the insured may be able to obtain jurisdiction over the defendant.''

As for the very obnoxious and offensive character of the German decrees, the court is obliged to hold that governing law is no less controlling because it is bad law. The plaintiffs shift the point when they argue that our courts will not *enforce* foreign law contrary to our own public policy. This is not a case of enforcing German law here but rather of necessarily recognizing the force of German law in Germany. Certainly, our courts would not enforce the German law by applying it to the assets of these plaintiffs in this country, but we cannot undo or set at naught what has been done by the German Government with the assets of the parties in Germany.

Our courts have repeatedly held, as a matter of necessity, that their judgment in such matters cannot be affected by the obnoxious character of the foreign law. (*Holzer* v. *Deutsche Reichsbahn-Gesellschaft*, 277 N. Y. 474; *Dougherty* v. *Equitable Life Assurance Society, supra; McCarthy* v. *Reichsbank*, 259 App. Div. 1016.) As Chief Judge POUND said in *Salimoff & Co.* v. *Standard Oil Co.* (262 N. Y. 220, 224): ''The courts of one independent government will not sit in judgment upon the validity of the acts of another done within its own territory, even when such government seizes and sells the property of an American citizen within its boundaries.'' A fortiori, as stated by the Court of Appeals in the *Dougherty* case (*supra,* p. 90): ''However, it cannot be against the public policy of this State to hold nationals to the contracts which they have made in their own country to be performed there according to the laws of that country.''

The plaintiffs make the point that they are no longer German nationals and that it was by ceasing to be German nationals that their property was confiscated by the German Government. Unfortunately that fact cannot alter the power of the German Government over the assets represented by these policies and it remains the fact that the plaintiffs were German nationals when they made the contracts.

By virtue of the agreement of the parties, the governing law in relation to the performance of their contracts is the German law. The German Government having exercised its jurisdiction over the policies, relationship and property of the parties, and having appropriated the funds of the defendant .

and the property claims of the plaintiffs and declared the obligation of the defendant on the policies discharged, the plaintiffs may not maintain this action against the defendant here.

With the hope which the court entertains that in the afterwar world justice may be done, even within Germany, to the victims of German aggression, the dismissal of the complaints here is not to be regarded as a world-wide judgment in favor of the defendant. The plaintiffs are left free to pursue whatever rights they may have now or in the future in Germany or Switzerland. Their attempt to recover against the defendant here must fail. Enter judgment accordingly.