WILLIAM C. MASON, Respondent, *v.* ELECTROL, INCORPORATED, Appellant.

Argued April 3, 1944; decided May 25, 1944.

*N. Le Van Haver* for appellant.   I. All rights of both parties under the contract were terminated under Paragraph "Seventh", not merely defendant's right to further exploit the patents. (*Cohen* v. *Bass, Inc.*, 246 N. Y. 270; *Bauman & Co.* v. *Manwit Corporation*, 213 App. Div. 300; *Brooklyn City R. R. Co.* v. *Kings Co. Trust Co.*, 214 App. Div. 506, 242 N. Y. 531; *Hurd* v. *Kelly*, 78 N. Y. 588; *Manvel* v. *Holdredge*, 45 N. Y. 151; *Wing* v. *Ansonia Clock Co.*, 102 N. Y. 531; *Wolkind* v. *Berman*, 232 App. Div. 47; *Graf* v. *Hope Building Corp.*, 254 N. Y. 1; *Carroll* v. *Title Guarantee & Trust Co.*, 131 App. Div. 221; *Walton Water Co.* v. *Village of Walton*, 238 N. Y. 46; *Zimmerman* v. *R. & H. Chemical Co.*, 211 App. Div. 321, 240 N. Y. 501; *Churchill Evan. Assn., Inc.*, v. *Columbia B. System, Inc.*, 142 Misc. 210, 236 App. Div. 624.)   II. The second cause of action is merely to recover minimum royalties under the contract and is not an action to recover damages for breach thereof, but neither would survive a termination under paragraph "Seventh". (*Starin* v. *Fonda*, 107 App. Div. 539; *Hurd* v. *Kelly*, 78 N. Y. 588; *Manvel* v. *Holdredge*, 45 N. Y. 151; *Wing* v. *Ansonia Clock Co.*, 102 N. Y. 531; *Denise* v. *Swett*, 142 N. Y. 602; *Model Brassiere Co., Inc.*, v. *Maiden Form B. Co., Inc.*, 139 Misc. 694; *Schalkenbach* v. *National Ventilating Co.*, 129 App. Div. 389.)

*Jay Leo Rothschild* and *William A. Glenn* for respondent. I. The license agreement was to continue for as long as the patent structure underlying it. (*Koppe* v. *Burnstingle*, 29 F. 2d 923; *Fitch* v. *Shubert*, 20 F. Supp. 314; *St. Paul Plow Works* v. *Starling*, 140 U. S. 184.)   II. Paragraph "Seventh" of the

license agreement did not, either in terms or effect, contemplate a mutual rescission of all the obligations and liabilities incident to the license agreement, including defendant's liability for damages for breach of its obligation to pay royalties for the life of the patent structure. The termination contemplated, in the event of defendant's default, was only of plaintiff's obligation to afford, and defendant's privilege to exploit, the licenses under the patent structure. Paragraph " Seventh " was intended to work a forfeiture of defendant's rights to exploit plaintiff's patents; not to forfeit plaintiff's right to damages for defendant's breach. The termination was for plaintiff's benefit, not defendant's. (*Meyer* v. *Brenzinger,* 22 Misc. 712; *American Delinting Co.* v. *Pomeraning,* 274 F. 212; *Matter of Robinson,* 203 N. Y. 380; *Samuels* v. *Quartin,* 108 F. 2d 789; *United States* v. *Baumgarten,* 249 F. 724; *Insurance Co.* v. *Dutcher,* 95 U. S. 269; *Nicoll* v. *Sands et al.,* 131 N. Y. 19; *Seymour* v. *Warren,* 179 N. Y. 1; *Miller* v. *McClintock Co.,* 210 Minn. 152; *Hard* v. *Seeley,* 47 Barb. 428; *Booth et al.* v. *Cleveland Mill Co.,* 74 N. Y. 15; *Born* v. *Schrenkeisen,* 110 N. Y. 55; *Stewart* v. *Griffith,* 217 U. S. 323; *Western Union Tel. Co.* v. *Brown,* 253 U. S. 101; *Cummings* v. *Standard Harrow Co.,* 55 Misc. 601, 124 App. Div. 915, 195 N. Y. 513.) III. Notwithstanding termination of the license structure — indeed, even if there had been termination of the entire agreement, for Electrol's fault, plaintiff is entitled to recover his damages. (*Anvil Mining Co.* v. *Humble,* 153 U. S. 540; *Atwater & Co.* v. *Panama R. R. Co.,* 246 N. Y. 519.) IV. In any event, since defendant immediately after assertion of its right to forfeit the contract, by reason of its own default, paid the sum of $500, and now admits its liability for another $500 it waived any right of forfeiture which it may have had. (*Titus* v. *Glens Falls Insurance Co.,* 81 N. Y. 410.) V. An interpretation of an agreement should be avoided, which makes it nugatory, or which results in such a harsh construction that it puts one party at the mercy of another. (*Morris* v. *Morton Coal Co.,* 291 N. Y. 582; *People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125; *Bushey & Sons* v. *American Ins. Co.,* 237 N. Y. 24; *Gillet* v. *Bank of America,* 160 N. Y. 549; *Aldrich* v. *New York Life Ins. Co.,* 235 N. Y. 214; *Schoellkopf* v. *Coatsworth,* 166

N. Y. 77; *Segar* v. *King Features Syndicate, Inc.,* 262 App. Div. 221; *Coletti* v. *Knox Hat Co., Inc.,* 252 N. Y. 468.) VI. Evidence of the surrounding circumstances may explain and resolve a patent ambiguity, or create, develop and resolve a latent one. Such evidence presents a question of fact, and is admissible to clarify the intended meaning of the agreement in suit. Accordingly, the proper construction of the agreement cannot, in case of doubt thus apparent, or made apparent, be determined, as a matter of law, on the pleadings alone. (*Utica City Nat. Bank* v. *Gunn,* 222 N. Y. 204; *Becker* v. *Frasse & Co.,* 255 N. Y. 10; *Atwater & Co.* v. *Panama R. R. Co.,* 246 N. Y. 519; *Lamb* v. *Norcross Brothers Co.,* 208 N. Y. 427; *Rassmussen* v. *New York Life Ins. Co.,* 267 N. Y. 129.)

LOUGHRAN, J. On November 28, 1939, William C. Mason, as the owner of certain applications for letters patent upon liquid fuel burning apparatus, entered into a license contract with Electrol, Incorporated, as licensee, to take effect as of January 1, 1940. The presently material parts thereof are the following:

"*First:* Electrol agrees to pay Mason the sum of Two thousand four hundred dollars ($2400) per year during the life of this License Agreement * * *. Electrol further agrees to pay to Mason * * * royalties at the rates set forth in the table herein * * * on the tenth day of each month following the month during which the royalties are earned by way of shipments of burners. * * *

" The parties hereto are mindful of the fact that this License Agreement is being entered into before patents have actually been granted on the applications concerned and * * * that a division of its rights among competitors on a sub-licensee basis might facilitate the building and maintenance of stronger patent protection and promote more sales than could otherwise be effected. Electrol, therefore, agrees to undertake the creation of a so-called ' Mason Patent Estate ' * * * and Electrol is expressly authorized and empowered to transfer to said Estate the right to grant (in its sole discretion) non-exclusive licenses to others, upon such terms and conditions as said Estate shall determine to be advisable and proper. Mason shall be entitled to receive through said Estate royalties from all sub-licensees at the same rates * * *

"*Second:* Mason hereby grants to Electrol, its successors and assigns, the sole and exclusive right, license and privilege to make, use and sell * * * fuel burners embodying the inventions * * * for the full term of the latest of said Letters Patent issued or to issue on said applications * * *, unless this License Agreement be terminated earlier, as hereinafter provided * * *.

"*Sixth:* In the event Electrol or the ' Mason Patent Estate ' shall fail to pay any sum or sums provided as royalties under the provisions hereof * * *, Mason may terminate the license granted by this License Agreement to Electrol and by the ' Mason Patent Estate ' to its sub-licensees by giving Electrol thirty (30) days' notice in writing of such termination; but * * * should Electrol and/or the ' Mason Patent Estate ' within said thirty (30) days make full and complete payment of all sums due, such termination shall not take effect * * *.

"*Seventh:* All rights, privileges and benefits of the respective parties under this License Agreement and the license hereby granted to Electrol and all sub-licenses granted by the ' Mason Patent Estate ' shall be terminated and canceled for all purposes without notice in the event Electrol or the ' Mason Patent Estate ' shall fail to pay to Mason within sixty (60) days after the expiration of any quarterly period of any year after the calendar year 1940 (quarterly periods beginning on the first day of January, April, July and October of each year), the amount of all royalties to which Mason is entitled for such quarterly period in accordance with the provisions of this License Agreement."

No royalties were paid to Mason after March, 1941, with the result that he brought this action on April 20, 1942, for breach of the contract. As a defense Electrol set up its own nonpayment of royalties in the period from April 1, 1941, to June 1, 1941, on the theory that this sixty-day omission had put an end to the contract on both sides by operation of the above words of paragraph Seventh. A motion by Electrol for judgment on the pleadings followed and was denied on Mason's argument that the contract imposed upon Electrol an " obligation to pay royalties for the life of .the patent structure." By leave of the Appellate Division, Electrol has now

brought the case here upon the following question certified: "Should defendant's motion for judgment on the pleadings have been granted?"

The first thing to be noticed is that the contract is silent in respect of any specific date for its termination.

Special Term was of opinion that Electrol at all events was estopped from asserting its own default as a ground for extinguishment of its obligation. The difficulty we have with this solution is that thereby, as it seems to us, an absolute quality in Electrol's undertaking is presumed from the start.

It is in order next to notice what Mason's counsel now have in mind when they speak of "the patent structure." They say: "Paragraph 'Seventh' clearly contemplates cancellation of such 'rights, privileges and benefits,' granted to said 'respective parties' *to the patent structure,* i. e., Electrol, Mason Patent Estate and its sub-licenses — and nothing else." (The emphasis is first-hand.) But as appears by paragraph First, Mason Patent Estate had not even been organized when the contract went into effect. Mason's argument thus imports that the phrase 'respective parties' — as it occurs in paragraph Seventh — designates not the parties to the contract, but only Electrol and one or more persons who were nonexistent at the time the contract was signed by Electrol and by Mason. This interpretation was accepted by a majority of the Appellate Division. They said: "The license agreement was to continue as long as the patent structure underlying it. Paragraph 'Seventh' was intended to work a forfeiture of defendant's rights to exploit plaintiff's patents; not to forfeit plaintiff's right to damages for its breach." (267 App. Div. 216, 217.)

We cannot go along with so valiant a construction. There is nothing obscure or absurd in a stipulation that all rights of the respective parties under an agreement shall be terminated for all purposes, after one of the parties to the contract shall have failed in performance for a stated period. Consequently the express provision to that effect in paragraph Seventh ought not to be artificially altered by us, unless its natural meaning is unworthy of the whole of the language the parties have used. Looking through this contract from that standpoint, we do not see how the words of paragraph Seventh can normally bear the implied meaning that Mason imputes to them; and, on the

other hand, we believe the regular significance of that paragraph disproves the liability charged to Electrol by this cause of action.

The orders should be reversed and the motion granted, with costs to the appellant in all courts. The question certified should be answered in the affirmative.

LEHMAN, Ch. J., LEWIS, CONWAY, DESMOND and THACHER, JJ., concur; RIPPEY, J., taking no part.

Orders reversed, etc.