**AMERICAN MACHINE & METALS, Inc. v.
DE BOTHEZAT IMPELLER CO., Inc.**

No. 40–166.

United States District Court
S. D. New York.

Jan. 18, 1949.

Appeal Dismissed April 8, 1949.

See also 8 F.R.D. 459.

Alphonse Kenison, of New York City (Chadbourne, Wallace, Parke & Whiteside, Leonard P. Moore, Charles Pickett and Edward R. Neaher, all of New York City, of counsel), for plaintiff.

Perkins, Malone & Washburn, of New York City (Watson Washburn, of New York City, of counsel), for defendant.

KNOX, Chief Judge.

In April, 1934, the litigants herein made a contract whereby the De Bothezat Company, defendant, assigned to plaintiff, Metals Corporation, certain letters patent and conveyed to it certain plant and equipment facilities. In addition, it leased other equipment to plaintiff. The purpose was that the latter should carry on a fan business in which defendant had previously engaged. In return, plaintiff promised to pay specified royalties to defendant. The tenth paragraph of the contract, in part, is as follows:

"One year after the date hereof or at any time thereafter, Metals Corporation may give the De Bothezat Company notice, in the manner hereinafter provided, of its intention to terminate this agreement and six (6) months after notice shall have been so given, this agreement and the lease of the Leased Equipment * * * shall thereupon terminate * * *."

Plaintiff now wishes to terminate the contract, but desires, also, to remain in the fan business. It seeks a declaratory judgment which will permit such termination, and allow it, in addition, to continue to manufacture and sell fans. The Court of Appeals for this Circuit has unanimously ruled that this court may properly deal with this subject matter. 166 F.2d 535.

Defendant's answer to plaintiff's petition sets up six defenses and counterclaims. Four of these are involved in the motion now before the court. Each of the four acts of wrongful conduct alleged against plaintiff is said to constitute both a defense and a counterclaim. As a defense, it is asserted in each instance that "said wrongful action of plaintiff makes inequitable plaintiff's exercise of said option to terminate." As counterclaims, defendant asks for specified damages on account of each wrong. The defenses and counterclaims are as follows: Second, that plaintiff wrongfully converted equipment leased to it by defendant (damages of $100,000); Third, that plaintiff wrongfully and wilfully did not use the name of De Bothezat in its promotion (damages of $50,000); Fourth, that plaintiff has wrongfully refused to furnish defendant with a proper audit (damages of $10,000); and Sixth, that plaintiff has failed to use its best efforts to promote the sale of the licensed product (damages of $500,000).

The present controversy between the parties was raised at a pre-trial conference. Plaintiff insists that it should be granted a separate trial of the issues set forth in its complaint and the two defenses contained in the answer, which have not been described. These defenses, it is admitted, are good in law. So far as the other defenses and counterclaims are concerned, plaintiff desires that they be reserved for determination at a later time. Defendant, on the other hand, urges that all matters in controversy be resolved at a single trial.

Assuming that the question as to whether plaintiff may terminate its contract, and remain in the fan business, without violating a legal duty, can conclusively be resolved in a separate trial, it would appear that the procedure suggested by plaintiff should be followed. Federal Rules Civil Procedure, rule 42(b), 28 U.S. C.A. Collins v. Metro-Goldwyn Pictures, 2 Cir., 106 F.2d 83; Society of European Stage Authors & Composers, Inc., v. WCAU Broadcasting Co., D.C., 35 Fed. Supp. 460. See my opinion of November 5, 1948, 8 F.R.D. 459, granting a pre-trial conference in the present case.

This suit has been pending for two years. Notwithstanding, defendant has informed the court that it will require considerable further time in order to enable it to prepare for trial on the above mentioned four defenses and counterclaims. Meanwhile plaintiff, who would prefer to terminate the contract and continue in the fan business as an independent manufacturer, is obligated to pay substantial royalties to defendant. Under existing conditions, plaintiff is apprehensive lest that, if it fails to pay royalties to defendant, it may be under liability to defendant, not only for royalties, but for its business profits as well.

The question as to whether, in a separate trial, plaintiff's contention that it may terminate the contract and continue thereafter to manufacture. fans, can conclusively be determined, depends upon the legal sufficiency of the four defenses heretofore described. If they be sufficient, the trial of the complaint must provide defendant with an opportunity to support them with adequate proof.

In this fashion, therefore, I am confronted with the necessity of saying whether, as a result of the manner in which the problem first came before me, viz., on a pretrial hearing, I can pass upon the legal adequacy of the defenses. If this question be decided in the affirmative, I must then conclude if, with propriety, they can be stricken from the answer. There is nothing here that can impede this course of action.

Numerous cases have held that a pre-trial order may pass judgment upon the legal sufficiency of a defense. Yale Transport Corporation v. Yellow Truck & Coach Mfg. Co., D.C.S.D.N.Y.1944, 3 F.R.D. 440; Schram v. Kolowich, D.C. Mich.1942, 2 F.R.D. 343; Berry v. Spokane, Portland & Seattle R. Co., D.C.Or. 1942, 2 F.R.D. 483. Defendant argues, however, that plaintiff has waived its right to relief of this character. This, it would seem, is not the fact. Rule 12(h) of the Federal Rules Civil Procedure, entitled "Waiver of Defenses" expressly excepts defenses and objections made in a reply, and also "the objection of failure to state a legal defense to a claim."

Defendant's position, in essence, is this: So long as plaintiff continues to manufacture under the terms of the contract, the wrongs alleged against it will not inflict irreparable harm on defendant. However, if the contract be terminated, such wrongs would subject defendant to injuries of that nature. For these reasons, defendant urges that plaintiff has no legal right to terminate the agreement, and is obliged to continue to observe its provisions. Furthermore, even if plaintiff may terminate, on condition that it ceases to manufacture fans, it can not terminate and continue in such business. A duty to discontinue the manufacture of fans arises, so it is said, from plaintiff's prior wrongful conduct, should plaintiff choose to terminate the contract.

The contract in suit is to be interpreted, I think, according to the law of the State of New York. Plaintiff's executive affairs are, and always have been, conducted in New York, although it maintains a statutory office in Delaware, where the company was incorporated. From 1934 to 1936, its manufacturing activities took place within the state. Thereafter, and at the present time, they were carried on in Illinois. Defendant's only office is, and has been, in New York, and it was there that all royalty payments were made. Furthermore, the 20th paragraph of the contract provides that "This agreement shall be construed in accordance with the laws of New York."

This Court must follow the local rule on conflicts. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. The local rule, it would seem, is in accordance with Sec-

tion 358 of the Restatement of Conflicts which is to the effect that the manner of performance, ordinarily, is to be decided under the prevailing law of the place of performance. Union National Bank of Chicago v. Chapman, 1902, 169 N.Y. 538, 62 N.E. 672, 57 L.R.A. 513, 88 Am.St.Rep. 614. Under the circumstances here present, the issue as to whether plaintiff's termination of the contract would constitute a breach of its provisions is a matter that has to do with performance rather than with interpretation of the agreement.

■■■ So far as my research has gone, I have found no decision precisely in point with respect to the place of performance on the facts here involved. Nevertheless, I am disposed to think that New York should be regarded as the place of performance. Furthermore, under local law, it would appear that the actual place of performance is not necessarily a controlling consideration, but that the inquiry is to be more closely related to the intention that the parties had in mind. Kerr v. Tagliavia, 101 Misc. 614, 168 N.Y.S. 697, appeal dismissed 1920, 229 N.Y. 542, 129 N.E. 907. In the absence of a showing to the contrary, the intended place of performance of a contract will be presumed to be the same as the place of its inception. In this instance, the State of New York. Thompson v. Lakewood City Development Co., 105 Misc. 680, 174 N.Y.S. 825, affirmed 188 App.Div. 996, 177 N.Y.S. 926.

But, aside from all this, the parties themselves have decisively agreed that the law of this state is to apply to controversies arising out of their contract. Dougherty v. Equitable Life Assurance Society, 1934, 266 N.Y. 71, 193 N.E. 897; Compania De Inversiones Internacionales v. Industrial Mortgage Bank of Finland, 1935, 269 N.Y. 22, 198 N.E. 617, 101 A.L.R. 1313; Swift & Co. v. Bankers Trust Co., 1939, 280 N. Y. 135, 19 N.E.2d 992. As stated by Justice Peck in Kleve v. Basler Lebens-Versicherungs-Gesellschaft, in Basel, 1943, 182 Misc. 776, 45 N.Y.S.2d 882, 885:

"Assuming, however, that there is merit in the plaintiffs' contention as to the place of performance, the governing law in this case cannot be determined on so simple an expedient as determining the place of performance. Indeed, that is neither the exclusive or controlling consideration in determining the governing law. Our courts recognize that it is the intention and agreement of the parties which are controlling. * * *

"The place of performance may be an important consideration in determining the intention of the parties and, in the absence of other indications of intention, may be the determining factor, but the search for controlling law is not addressed merely to determining the place of performance but is addressed to the intention of the parties. As stated by Professor Lorenzen: 'If the parties have not expressed themselves regarding the law that shall determine the extent of their rights, duties, etc., their intention may appear from the terms of the contract in the light of surrounding circumstances. However, expressed, the actual will of the parties controls.' 31 Y.L.J. 54.

"What was the intention of the parties here as it appears from the terms of the contract and surrounding circumstances?"

In view of this rule, New York law must govern both of the above-mentioned substantive issues.

Although the parties disagree as to the nature of the right of termination provided for in the contract, it must be conceded that, for purposes of the present motion, plaintiff's right to terminate the contract at any time and on appropriate notice, is beyond dispute. Thus, the precise issue of defendant's first contention is that irreparable harm flowing from plaintiff's exercise of its contractual right to terminate the agreement, after having committed the wrongs alleged against it, would impose a legal injury on defendant that is sufficient to deprive plaintiff of its right of termination.

■ The law of New York is to the effect that, where a contract expressly permits termination on notice, a breach by a defendant prior to such notice does not render the termination ineffective. U. S. Aluminum Co. v. Calvert Lithographing Co., App.Term 1906, 49 Misc. 491, 97 N.Y.S. 1042; Motion Picture Trade Directory Co.

v. Wallace, Sup., App.Term 1st Dept. 1921, 186 N.Y.S. 80, affirmed without opinion, 1st Dept. 1921, 197 App.Div. 938, 188 N.Y. S. 937. Defendant argues that in none of these cases was the injury caused by termination irreparable, and that, therefore, they are not perfectly applicable to this dispute. They do establish, however, that the alleged wrongful action of plaintiff in and of itself can not bar termination, aside from the alleged irreparable injury.

Only one decision which rules on a contention that termination as permitted by a contract may itself be a wrong, has come to my attention. That case is Randall v. Michelin Tire Co., Sup.1930, 137 Misc. 570, 244 N.Y.S. 44, where the court granted a motion to dismiss against a complaint charging the "wrongful" cancellation of a contract containing express permission to terminate. In Willis v. Rose, Sup.App. Term 1899, 29 Misc. 111, 60 N.Y.S. 271, 273, there is a dictum to the effect that it might be a good defense to show that termination was "unreasonable, capricious, or unjust." Opposing this is dictum in Clover Condensed Milk Co. v. Cushman Brothers, 1st Dept. 1898, 31 App.Div. 108, 52 N.Y.S. 769, 770, to the effect that it would be a good defense "to show that this notice was ever retracted, or that the plaintiff did anything to withdraw it", with no mention made of inequitable termination. The pleadings raise no question of a termination "motivated solely by a malicious purpose unmixed with any other", which may be unlawful. MacDonald Bros. v. Halston, Sup.1946, 63 N.Y.S.2d 909, 912.

According to a note in the Harvard Law Review, 45 Harv.L.R. 378, 1931, the New York rule, rejecting such defenses, is the better, and the majority, view.

An analogous case supporting the conclusion suggested by the above decisions is New York Telephone Co. v. Jamestown Telephone Corporation, 1940, 282 N.Y. 365, 26 N.E.2d 295, 297. There, the New York Company sued a local telephone company to recover on a contract which the defendant had terminated in the manner provided in the contract. Plaintiff claimed the termination was ineffective because of the subsequent dealing between the parties.

The Court held for defendant, stating as follows:

"Analogy is incomplete between cases where a party to a contract asserts a right to rescind for fraud or breach of contract and a case where a party to a contract asserts a right given by contract to limit its life by notice that the contract will terminate at a time fixed by the notice in accordance with the provisions of the contract. * * * In the second group of cases the right to terminate is absolute and there can be no question of waiver of previous wrong and no question of right to retain benefits during the interval between notice of termination and the date when termination becomes effective."

While this case does not involve any claim or irreparable damage to the plaintiff, it does illustrate the court's determination to give effect to a cancellation clause according to its terms.

■ If a breach prior to termination does not prohibit termination by the party who breached, and if it be no defense to a termination provided for in the contract that it was "wrongful," then I think it may be concluded that it is the law of New York that a wrongful breach prior to termination, and not, in itself causing irreparable injury, but causing such injury if the contract were to be terminated, can not defeat the right to terminate expressly granted in the contract. The rule, in short, is that the intent of the parties governs. Mason v. Electrol, Inc., 1944, 292 N.Y. 482, 55 N.E. 2d 747.

Turning now to defendant's second contention, which is that, on account of the wrongs alleged in the aforementioned four defenses, that plaintiff may not continue in the fan business, irrespective of any right it may have to terminate the contract.

Defendant, of course, may possibly have a good defense to plaintiff's complaint upon the ground that the Metals Company contracted not to compete with defendant after making election to terminate the agreement, unless it be that such covenant is unenforceable, because it unlawfully restrains competition. If defendant so desires, it may raise that issue upon the separate trial of the complaint. However, the problem

here differs from that. The position is that there is a relationship between the parties which—because of these alleged wrongs—would justify a court of equity on a full trial of the complaint and the four defenses involved on this motion, to forbid the plaintiff to continue in the fan business.

Defendant claims that plaintiff and defendant were joint adventurers, citing Selwyn & Co. v. Waller, 1914, 212 N.Y. 507, 106 N.E. 321, L.R.A.1915B, 160; Underhill v. Schenck, 1924, 238 N.Y. 7, 143 N.E. 773, 33 A.L.R. 303; May v. Hettrick Bros., 1917, 181 App.Div. 3, 167 N.Y.S. 966. It has also cited cases which suggest that it views the relationship as one of agency. It will be assumed that the pleadings show one of these relationships.

After the termination of such a relationship, one who was formerly an agent is under certain limitations with respect to the competition he may offer to his principal, Byrne v. Barrett, 1935, 268 N.Y. 199, 197 N.E. 217, 100 A.L.R. 680; Restatement of Agency, Sec. 393(e) and Section 396; Mechem on Agency (1914), Sections 1209-1212; and the same is undoubtedly true for joint adventurers. May v. Hettrick Brothers, supra. These limitations arise out of the confidence or trust imposed in the agent or joint adventurer, and concern such matters as the employment of confidential customers' lists or trade secrets, or the appropriation of business opportunities which properly belong to the principal or the joint adventure.

Nevertheless, I have found no case, and none has been cited to me, holding that an agent or joint adventurer may not enter the same field of business, on his own account, after the termination of the relationship. Even where the defendant agent is a corporation, the injunction will only prohibit the use of the confidential information. Lamont, Corliss & Co. v. Bonnie Blend Chocolate Corporation, 1929, 135 Misc. 537, 238 N.Y.S. 78. Cf. New York Automobile v. Franklin, 1905, 49 Misc. 8, 97 N.Y.S. 781; Fairchild Engine & Airplane Corporation v. Cox, Sup.1944, 50 N.Y.S.2d 643. As to joint adventurers, in May v. Hettrick Brothers, supra [181 App.Div. 3, 167 N.Y.S. 972], it was stated that, "It is

* * * the settled law that, until the * * * joint adventure is abandoned a * * * joint adventurer cannot act for himself", and in Meinhard v. Salmon, 1928, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1, that, "Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty". These remarks indicate that there can be no complete prohibition of competition after the relationship is terminated. I would think that the limits of the relief which defendant might have are illustrated in the case of Russell Hardware and Implement Manufacturing Co. v. Utica Drop Forge & Tool Co., 1909, 195 N.Y. 54, 87 N.E. 788, where the contract was somewhat similar to that involved here. In that suit, the licensee was enjoined from violating the licensor's patent rights after the contract had been terminated, but there was no injunction against the licensee remaining in the same general field of business.

Since it is certainly possible for plaintiff to manufacture fans without violating any duty it owes to defendant, these wrongs are not a good defense in this action. The most that defendant could hope to accomplish by the proof of these four wrongs, is that the likelihood of plaintiff breaching its duty not to abuse confidential information is so great—that an injunction should be entered in anticipation of the wrong. But the legal duty which plaintiff would owe to defendant, should plaintiff elect to terminate—assuming that plaintiff's interpretation of the instrument is correct—would not be enlarged in any way by these alleged prior wrongs.

For the above reasons, I grant the motion for a separate trial. Upon that trial, the contract can be interpreted, and the court can decide if plaintiff may terminate the contract and continue in the fan business. True, it will not decide whether an injunction should issue against certain abuses which defendant may fear, but in these circumstances that issue may properly await the second trial. The hardship, if such it be, will be mitigated by the fact that plaintiff can, at best, terminate upon six months notice.