Henry Epstein, J.
This is an application for an order under article 78 of the Civil Practice Act to annul the determinations of November 10, 1958 and March 26, 1959, by Commissioner Elmer A. Carter of the State Commission against Discrimination and to direct said commission to take appropriate action to credit the charges of the complaint in American Jewish Congress v. Arabian-American Oil Company (case No. C-4296-56). Petitioner charged Arabian-American Oil Company (“Aramco”) with violation of section 296 (subd. 1, pars, [a], [c]) of the Executive Law of New York State, known as the Law Against Discrimination. Petitioner is recognized by the commission as coming within the reasonable scope of a “ person ” authorized to register a complaint under section 296 (subd. 1, par. [c]). Adhering to his prior determinations, respondent Carter on March 26, 1959 dismissed the petition of the American Jewish Congress relative to its charges of Aramco’s violations of both spirit and letter of the State’s anti-discrimination law. Respondent commission voted to permit Aramco to inquire into the religion of job applicants as a “ bona fide occupational qualification ’ ’ and further to authorize Aramco to have applicants for employment fill out a visa application for travel in Saudi Arabia containing an inquiry into the applicant’s religion. Commissioner Caroline Simon, now Secretary of State of New York, dissented, stating forthrightly that “ our basic documents of freedom * * * are never to be subordinated to immediate business gain.” Her position was *448 that there was no State Department policy which would dictate the subversion of this salutary New York State law to an internal policy of Saudi Arabia motivated by Arab hatred of Israel
Under date of June 15, 1959, Assistant Secretary of State William B. Macomber wrote to United States Senator E. L. Bartlett of Alaska regarding’ this very issue: “ We assure you that the Department does not intend to inject itself in any way into the proceedings of a State court; at the same time, the Department does have an obligation, when requested to do so, to provide State authorities with information respecting the policies of other Governments and of our own in foreign lands.”
There is not the slightest doubt that nowhere in the history and origin of the statute under consideration is there the slightest authority for the determination by respondent that the religion of an applicant for employment is or can ever be regarded as a “bona fide occupational qualification.” Any such holding would undermine the very foundation of our American concept of liberty and the constitutional safeguards of that liberty. The only cases where such inquiry is upheld are those where failure to permit such might interfere with the functioning of a religious organization (see remarks of Hon. Chables Tuttle in Hearings, pp. 349, 350, 670). Respondent commission has refused to permit a help-wanted advertisement calling for a “colored worker” on the asserted ground that color was a “ bona fide occupational qualification for a position as a social worker ” (1948 Report of Progress, p. 63). The only departure from that sound principle is the Aramco ruling by which this commission of the State of New York flouts the principles of our Founding Fathers.
The record here under review reveals that the King of Saudi Arabia not only prohibits employment of Jews in Arabia, but also “ strenuously objects to the employment of Jews in any part of Aramco’s operation.” (Testimony of field representative Anderson, pp. 3-4.) Aramco cannot by virtue of its contract even purchase electrical equipment from Philco, a domestic corporation, because of “ its Jewish management.” These are undisputed facts. This court does not pretend to assert that Saudi Arabia may not do as it pleases with regard to whom it will employ within the borders of Saudi Arabia. Nor does this court pretend to say that Aramco may not hire whom it pleases to conform to its Arab master’s voice. What this court does say is that Aramco cannot defy the declared public policy of New York State and violate its statute within New York State, no matter what the King of Saudi Arabia says. Neto York State *449 is not a province of Saudi Arabia, nor is the Constitution and statute of New Yorh State to be cast aside to protect the oil profits of Aramco. Nor will the fact, if it be such, that the employment is for possible service in Saudi Arabia permit the subversion of our State law aimed to preserve our democratic heritages. The Senate of the United States on July 25, 1956, adopted Senate Resolution 323 (Cong. Record, p. 14330), which reads in part:
“ Whereas it is a primary principle of our Nation that there shall be no distinction among United States citizens based on their individual religious affiliations and since any attempt by foreign nations to create such distinction among our citizens in the granting of personal or commercial access or any other rights otherwise available to United States citizens generally is inconsistent with our principles; Now, therefore, be it
11 Resolved, That it is the sense of the Senate that it regards any such distinctions directed against United States citizens as incompatible with the relations that should exist among friendly nations, and that in all negotiations between the United States and any foreign state every reasonable effort should be made to maintain this principle.”
That declaration of noble foreign policy remains today. The State Department has not sought to override the Senate of the United States and Aramco cannot pretend that the State Department has done so. Aramco’s witness before this commission (Mr. Barry) frankly admitted that Aramco’s employees had to submit ‘ ‘ to this kind of interrogation with regard to their religion.” Aramco has divided its employees into five categories, the lowest of which encompasses those in positions of limited promotion opportunities and who cannot go to Saudi Arabia. It is a matter of record in these proceedings that out of some 887 employees on Aramco’s New York payroll, few, if any, Jews are employed. If, as perhaps correctly claimed by Aramco, this must result from the necessity of possible employment in Saudi Arabia, the answer of New York State is simply — Go elsewhere to serve your Arab master — but not in New Yorh State. Commissioner Carter admits that Aramco’s policy 1 ‘ would appear to be contrary to the provisions of the New York Law Against Discrimination and the rulings of the Commission.” However, he seeks an escape for Aramco in the ‘1 bona fide occupational qualification ’ ’ which the history of this statute reveals finds no possible application to a religious qualification for employment in Saudi Arabia. It is interesting to find that the Urban League of Greater New York and the National Association for the Advancement of Colored People *450 are on record in this proceeding for the petitioner and against the decision of the respondent commission.
If, as claimed by Aramco, a change in employment policy would obstruct American foreign policy in the Near East, or if the enforcement of the public policy of New York State would embarrass the State Department in the Near East, then it should be said that the honor of American citizenship, if it remains for New York State to uphold it, will survive Aramco’s fall from Arab grace. It is the holding of this court that an administration ruling which runs afoul of the Constitution and the law must be set aside. Also, there is no longer any doubt that a dismissal of a complaint may be reviewed in an article 78 proceeding (Matter of Jeanpierre v. Arbury, 4 N Y 2d 238; Matter of Guardian Life Ins. Co. v. Bohlinger, 308 N. Y. 174; Matter of Stork Restaurant v. Boland, 282 N. Y. 256, 274). The ruling of Commissioner Carter is unsupported by the evidence and violates the principles of the very law under whose mandate the Commissioner purported to act. This statute is protected under the Tenth Amendment of the United States Constitution (Railway Mail Assn. v. Corsi, 326 U. S. 88). There is no treaty, nor any Federal statute which stands in the path of enforcing the provisions of New York State’s Law Against Discrimination in employment. Informal statements of State Department underlings cannot override State laws. No foreign nation may dictate the nonenf orcement of a valid State law, at least not in New York State. An engineer who is Jewish is no less an engineer by being so- — and no cavalier attempt to classify him as not having a “ bona fide qualification” because he is Jewish will be countenanced by this court. Any such holding — -and the decision of Commissioner Carter is just that — destroys the safeguards of the First and Fifth Amendments of the Constitution of the United States. It is abhorrent to the public policy of New York State also. The Commissioner’s; determination also fails to meet the standard of a proper administrative decision. There is no factual basis set forth, based on the record (Matter of Barry v. O’Connell, 303 N. Y. 46; Matter. of New York Water Service Corp. v. Water Power & Control Comm., 283 N. Y. 23). A letter from Aramco that “ no applicant for domestic employment is requested to fill out an application for a Saudi Arabian visa ” is hardly a basis for the decision reached in this case. The record, however, even destroys this conclusion of the Commissioner (Items 22 and 23). The action of the Commissioner is arbitrary, capricious and without basis in fact or law. It runs counter to sound public policy of New *451 York State and of the United States (United States v. Pink, 315 U. S. 203, 230).
There is no treaty; there is no compact; there is no agreement between the United States and Saudi Arabia relating to the entry of Jews into Saudi Arabia. Aramco’s contract with the government of Saudi Arabia cannot be given the status of a treaty of the United States and not .even Aramco dares make any such assertion. That was clearly decided by the International Court of Justice in the Anglo-Iranian Oil Co. case (Report of Int. Ct. of Justice for 1952, p. 93). Aramco has, for reasons best known to itself, not made its contract with Saudi Arabia a part of the record. No such private contract can override the public policy or prevent the enforcement of the New York Law Against Discrimination. When Commissioner Carter declares that American interests in the Near East “ outiveigh the abstract vindication of state sovereignity ” he makes the commission for which he speaks the vassal of a foreign potentate. When Commissioner Carter seeks to justify his dismissal of petitioner’s case on a claim that ‘ ‘ the security of the United States is involved ” (Second determination, p. 9), he arrogates to himself the function of the State Department of the United States which has made no such declaration. The film of oil which blurs the vision of Aramco has apparently affected the respondent commission in this case. The discrimination practised by Aramco in New York State must cease and it is the duty of the respondent commission to see that it does. No treaty or statute will stand which impairs the freedom of one group of citizens because of religious affiliation. The free exercise of religion is thereby destroyed. Any such provision would clearly violate the Federal Constitution (1st and 5th Arndts.). Surely, the Commissioner respondent cannot do what a Federal treaty or statute would be unable to achieve (United Public Workers v. Mitchell, 330 U. S. 75, 100).
In summary — petitioner does not question the authority of Saudi Arabia to decide that no Jews shall enter that country — the Commissioner may not, however, place the policy of Saudi Arabia above the law and public policy of New York State. No agency of New York State may subordinate the law of this State to the dictates of a foreign State which violates our own public policy. There is nothing in Salimoff v. Standard Oil Co. (262 N. Y. 220, 224) nor in Kleve v. Basler Lebens-Versicherung Gesellschaft (182 Misc. 776) to the contrary. If, as this commission has held, “color” is not a “bona fide occupational qualification” (1948 Report of Progress, p. 63), then surely in *452 1959 “ religion ” cannot be so regarded, Saudi Arabia and Aramco to the contrary notwithstanding.
This court accorded respondent commission until July 14 at its request to confer with the United States State Department. On July 14 respondent advises that, after conferring with the State Department, it has “ nothing to add to the record ”.
The determination of the Commissioner is annulled and the matter is remitted to the commission for action not inconsistent with this opinion. [See, also, 19 Misc 2d 205.]