JOHN BYRNE et al., Copartners, under the Firm Name of BYRNE & BOWMAN, Appellants, *v.* THOMAS F. BARRETT, Respondent.

200

(Argued April 18, 1935; decided July 11, 1935.)

*Joseph M. Proskauer, Joseph L. Young* and *Eugene Eisenmann* for appellants.   Defendant is liable to account

to the plaintiffs for interfering with the plaintiffs' contract wrongfully and in violation of his fiduciary obligations. (*Gilder* v. *Davis*, 137 N. Y. 504; *Bendell* v. *Dominicis*, 251 N. Y. 305; *Tanenbaum* v. *Boehm*, 202 N. Y. 289; *Lloyd* v. *Matthews*, 51 N. Y. 124; *Meinhard* v. *Salmon*, 249 N. Y. 458; *Munson* v. *Syracuse, G. & C. R. R. Co.*, 103 N. Y. 58; *Essex Trust Co.* v. *Enwright*, 214 Mass. 507; *Gower* v. *Andrew*, 59 Cal. 119; *David* v. *Hanley*, 108 Ill. 39; *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380.) Resignation does not affect the disability of an agent from using special information and a special status acquired in the course of his employment adversely to his former employers. (*Elco Shoe Manufacturers* v. *Sisk*, 260 N. Y. 100; *State* v. *Gautier*, 108 Fla. 390; *Robb* v. *Green*, [1895] 2 Q. B. 315; *Lamb* v. *Evans*, [1893] 1 Ch. 218; *Peoples Coat Supply Co.* v. *Light*, 171 App. Div. 671; 224 N. Y. 727; *Trice* v. *Comstock*, 121 Fed. Rep. 620; *Dennison* v. *Aldrich*, 114 Mo. App. 700; *Connelly* v. *Special Road & Bridge Dist. No. 5*, 99 Fla. 450; *Eoff* v. *Irvine*, 108 Mo. 378; *Ringo* v. *Binns*, 10 Pet. [U. S.] 269; *Garinger* v. *Palmer*, 126 Fed. Rep. 906; *Carson* v. *Fogg*, 34 Wash. 448; *Smith* v. *Brotherline*, 62 Penn. St. 461; *Davis* v. *Smith*, 43 Vt. 269.) Defendant, having failed fully to disclose to his principals the progress of the negotiations, and having thereby misled them, could not take advantage of his own default. (*Loog* v. *Bean*, 26 Ch. 306; *Blaunt* v. *Robson*, 56 N. C. 73; *Means* v. *Ross*, 106 La. 175; *Jensen* v. *Snow*, 131 Me. 415; *Visigraph Typewriter Mfg. Co.* v. *Spiro Mfg. Co.*, 122 Misc. Rep. 852; *Selwyn* v. *Waller*, 212 N. Y. 507.) Plaintiffs never waived any rights against defendant. (*Fur & Wool Trading Co.* v. *Fox, Inc.*, 245 N. Y. 215.)

*Frank C. Laughlin, Joseph W. Kirkpatrick* and *Louis A. Tepper* for respondent. The defendant incurred no liability to the plaintiffs for any part of the commissions he received, for a mere " reasonable expectation " of success in the transaction did not constitute an asset or

property right of either the plaintiff or the defendant or of both. (*Morehouse* v. *Brooklyn Heights R. R. Co.*, 185 N. Y. 520; *Kavanaugh* v. *Commonwealth Trust Co.*, 223 N. Y. 103; *Foreman* v. *Foreman*, 251 N. Y. 237; *Matter of Saxon* v. *Erie R. R. Co.*, 221 N. Y. 179; *Lawrenceville Cement Co.* v. *Parker*, 29 N. Y. St. Repr. 864; 60 Hun, 586; 133 N. Y. 622; *Sibbald* v. *Bethelehem Iron Works*, 83 N. Y. 378; *Goodman* v. *Marcol, Inc.*, 261 N. Y. 188; *Hirsh & Schofield, Inc.*, v. *Gusmer*, 179 App. Div. 347; *Peters Mineral Land Co.* v. *Hooper*, 208 Ala. 324; *Meeks* v. *Miller*, 214 Ala. 684; *Welch* v. *Holmes*, 220 Mich. 584; *Poy* v. *Allan*, 231 Mich. 472; *Omega Inv. Co.* v. *Woolley*, 72 Utah, 474; *Abbott* v. *Bean*, 189 N. E. Rep. 435; *Carson* v. *Wiley*, 98 Wash. 476; *Irving Trust Co.* v. *Deutsch*, 2 Fed. Supp. 971; *Harris* v. *Morse*, 54 Fed. Rep. [2d] 109.) An agent upon the termination of his employment is entitled to compete fairly with his former principal and use any skill or knowledge he acquired during that employment when in so competing he violates no confidences of his former principal and uses none of his trade secrets and may solicit the trade of the customers of his former employer. (*Robertson* v. *Chapman*, 152 U. S. 673; *Clark Paper Mfg. Co.* v. *Stenacher*, 236 N. Y. 312; *Kaumagraph Co.* v. *Stampagraph Co.*, 235 N. Y. 1; *Meeder* v. *Provident S. L. Assur. Society*, 171 N. Y. 432; *Boosing* v. *Dorman*, 148 App. Div. 824; 210 N. Y. 529; *Peerless Pattern Co.* v. *Pictorial Review Co.*, 147 App. Div. 715; *Goldberg* v. *Goldberg*, 205 App. Div. 435; *Hirsh & Schofield, Inc.*, v. *Gusmer*, 179 App. Div. 347; 226 N. Y. 649; *Levy* v. *Cosmos*, 221 App. Div. 533; 248 N. Y. 622; *Scott & Co.* v. *Scott*, 186 App. Div. 518; *American Stay Co.* v. *Delaney*, 211 Mass. 229; *Black* v. *Hunter*, 169 Cal. 632.) Upon the termination of a fiduciary relationship, such as an agency or joint adventure, when there is no capital invested in the enterprise, the agent or any member of the joint adventure may thereafter recover and retain all commissions earned by him in consummating a trans-

action in which the former principal or former joint adventurer had been interested when the closing of the transaction is accomplished by his personal services rendered after the termination of the agency or joint adventure and he is not accountable to the former principal or joint adventurer in any respect for said commissions. (*Mason* v. *Wing,* 3 Abb. Dec. 210; *Mitchell* v. *Reed,* 61 N. Y. 123; *Meinhard* v. *Salmon,* 249 N. Y. 458; *First Nat. Bank* v. *Gallaudet,* 122 N. Y. 655; *Cassidy* v. *Hall,* 97 N. Y. 159; *Gordon Co.* v. *Garcia Sugars Corp.,* 241 App. Div. 155; *Byrne* v. *Blaker Advertising Agency, Inc.,* 239 App. Div. 395; *Mariner, Inc.,* v. *Hughes,* 235 App. Div. 143; *Hutchinson* v. *Birdsong,* 211 App. Div. 316; *Hammond Oil Co.* v. *Standard Oil Co.,* 259 N. Y. 312; *Schantz* v. *Oakman,* 163 N. Y. 148; *Kennedy* v. *Porter,* 109 N. Y. 526; *Brady* v. *Powers,* 112 App. Div. 845; 188 N. Y. 626; *Scott* v. *Kevorkian,* 222 App. Div. 177.) The unconditional acceptance of defendant's resignation, containing no provision with respect to commissions that the defendant might thereafter earn, constituted a release of any possible claim that the plaintiffs might have had against the defendant for commissions thereafter earned by him in the lease transaction. (*Coletti* v. *Knox Hat Co.,* 252 N. Y. 468; *Eames Vacuum Brake Co.* v. *Prosser,* 157 N. Y. 289; *Worley* v. *Calculagraph Co.,* 87 Misc. Rep. 309; *O' Neill* v. *Howe,* 9 N. Y. Supp. 746.) Plaintiffs are estopped by their unfair and inequitable conduct from now asserting any claim to the commissions recovered by the defendant. (*City of Buffalo* v. *D., L. & W. R. R. Co.,* 190 N. Y. 84; *Alsen A. P. C. Works* v. *Degnon Cont. Co.,* 222 N. Y. 34; *Swedish-American Bank* v. *Koebernick,* 136 Wis. 473; *Champion Spark Plug Co.* v. *Automobile Sundries Co.,* 273 Fed. Rep. 74; *Gafford* v. *Globe Transfer & Storage Co.,* 71 Wash. 204; *Realty Construction Co.* v. *Kennedy,* 234 Mich. 490; *Pittsburgh Const. Co.* v. *West Side Belt R. Co.,* 227 Penn. St. 90; *Rogers* v. *Whitney,* 91 Vt. 79; *Sibley* v. *Ross,* 102 Mich. 158.) Plaintiffs, in the

event of reversal, should only be awarded so much of the money paid into court as represents one-half of the net amount received in settlement of the judgment after deducting all amounts paid to attorneys and counsel and for the other expenses of conducting the litigation, with such interest thereon as the City Chamberlain is required to allow, and not six per cent, as erroneously awarded by the trial court. (*Levy* v. *Louvre Realty Co.*, 222 N. Y. 14; *Campbell* v. *Eckington Co.*, 229 U. S. 561; *Anderson* v. *Weber*, 162 App. Div. 725; *Saunders* v. *McDonough*, 210 Ala. 208; *Knudson* v. *George*, 157 Wis. 520; *Davidas* v. *Bradford*, 129 Wis. 524.)

CROUCH, J.   Defendant was employed as a salesman for plaintiffs, a firm of real estate brokers, his compensation being fifty per cent of commissions earned as a result of negotiations conducted by him in their behalf.   His employment was oral and terminable at will.   In February, 1929, he learned that the New York Trust Company was considering the erection of a bank and office building on premises occupied by it under a long term lease with privilege of renewals.   A bank officer acquainted him generally with the bank's requirements for such a building, and authorized him to find a purchaser willing to finance and erect it.   The terms so outlined contemplated a nine-story building, with the bank floor on the second story, vault space in the basement, a private entrance to the bank, and the building to be known as the New York Trust Company Building.   In exchange for the leasehold the bank's occupancy of its quarters was to be rent free.

Defendant interested one Natanson in the project, and the latter submitted a written proposal to the bank on March 21, 1929, and a second one on the following day. This latter met all the bank's conditions except in respect to free rent on renewals of the lease, which point was left open, with an indication that it also might be met.

On March 25 defendant dictated a resignation from

plaintiffs' employ, which suggested that he continue working in association with them on one specified deal, and be released on all others, including the one here in question, and sought to have plaintiffs accept this in writing. They declined to do so but did accept a resignation without any reservations on March 26, 1929. A difference about an unrelated transaction was assigned by defendant as the reason for his resignation.

Up to this time all the negotiations had been carried on by the defendant without the participation of plaintiffs or other persons in their employ. Plaintiffs appear to have been given only casual and limited information of the status of the negotiations and evidently had little faith in their success. At the time of defendant's resignation they were not further enlightened on this, but on the contrary were given to understand that nothing had been accomplished and that consummation of the transaction seemed impossible.

The day following, defendant informed both the bank and Natanson of his resignation and asked to continue with the matter on his own behalf. As he was then not a licensed broker he took steps to qualify, and was provisionally licensed April 4, 1929. On that day he secured from Natanson a written proposal covering all the terms the bank had laid down. The bank subsequently refused to go through with the transaction, and defendant sued it in his own behalf for the commissions involved, recovering a judgment of $71,457.85. Plaintiffs then brought this suit to impose a trust upon the proceeds of the judgment. While the commission case was on appeal it was settled for $66,213.37 after an application to the Supreme Court. A sufficient amount to cover the plaintiffs' claim, after payment of attorneys' fees in the commission action, was deposited with the City Chamberlain.

The Appellate Division reversed findings of the trial court that deliberate concealment or fraud had been practiced by defendant, and made a new finding that he

did not resign in bad faith. The finding remains that the negotiations prior to defendant's resignation, and consummated thereafter, constituted a continuous transaction; and on the undisputed facts it could not well be otherwise. It is argued, however, that in the absence of a finding of actual bad faith, the non-exclusive employment of plaintiffs as brokers gave them no enforceable rights in an incompleted transaction, in view of the fact that defendant's contract of employment included no covenant not to compete with plaintiffs after leaving their employ.

This is by no means a solution of the case. The essential point to be borne in mind is that the duty of an agent or employee not to use confidential knowledge acquired in his employment in competition with his principal is implicit in the relation. (*Kaumagraph Co.* v. *Stampagraph Co.*, 235 N. Y. 1, 6; *Little* v. *Gallus*, 4 App. Div. 569.) It exists as well after the employment is terminated as during its continuance. It is an absolute and not a relative duty. The question then is whether the defendant's knowledge of the status and the details of these negotiations is to be considered a confidential matter or merely a matter of general business knowledge and experience of competitive conditions gained from his calling.

It does not follow because plaintiffs' employment as brokers was not exclusive, or because no contractual meeting of the minds had taken place between the parties to the pending negotiations, that the matter was public property as far as defendant was concerned. Good will, the expectancy of continued business from an indefinite clientele, is far more nebulous from a strictly contractual point of view, yet its protection from acts of unfair competition is a common subject of equity jurisdiction. The possibility of renewal of a partnership lease is a less frequent illustration of a non-contractual matter of the same sort. Exact legal classifications are not always

adequate in determining the boundaries of fairness and loyalty.

It is clear enough that the defendant's knowledge of the status of negotiations was acquired solely in the course of his agency and that it was confidential and special rather than public or general; " something known only to one or a few and kept from others." (*Kaumagraph Co.* v. *Stampagraph Co., supra,* 7.) So little was it known, that plaintiffs themselves seem to have been informed only of tentative proposals which they were left to believe were and would be unfruitful. In this, it seems to us, there was not only a breach of confidence after the employment terminated, but a failure by defendant to live up to his duties before that time. His position was not simply that of plaintiffs' deputy with respect to this transaction; his knowledge of it was superior to theirs. He was the managing partner in the venture, and he was for this reason under an active duty of full disclosure to them, not simply of refraining from deceiving them. (*Meinhard* v. *Salmon,* 249 N. Y. 458.) It is true that, unlike an ordinary employee, defendant had a potential interest in the outcome of the negotiations which he may have been entitled to continue. He might have offered to continue in association with them on this transaction, as he did on another; but his own testimony establishes that he did not. He might have acquainted them fully with the status of the matter and given them an informed choice of whether they wished to surrender the matter to him or to compete with him on even terms. This he did not do. Under these circumstances a finding of actual fraud or bad faith is unessential. He may be held liable even though not " guilty of a conscious purpose to defraud." (*Meinhard* v. *Salmon, supra,* 467, 468.)

We find no merit in the contention that plaintiffs waived any valid claim to the commission recovered in the action against the trust company. The findings are

to the contrary. Nor do we think the alleged inequitable conduct of the plaintiffs creates an estoppel. The elements of reliance and change of position are lacking. The amount of the judgment as determined by the trial court was, under all the facts, correct except that the interest should be at the rate allowed by the Chamberlain. The fund was impounded at the instance of the plaintiffs for their own protection. The defendant has not enjoyed the use of the money.

The judgment of the Appellate Division should be reversed and the judgment of the Special Term modified in accordance with this opinion and as so modified affirmed, with costs in this court and in the Appellate Division to appellants. (See 268 N. Y. 630.)

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and LOUGHRAN, JJ., concur; FINCH, J., not sitting.

Judgment accordingly.