CENTRAL NEW YORK REALTY CORP., Respondent, *v.* PAUL ABEL et al., Appellants.

Fourth Department, June 29, 1967.

*Driscoll, Mathews, Gingold & Cass* (*Bernard Samuels* of counsel), for appellants.

*Hancock, Ryan, Shove & Hust* (*Stewart F. Hancock, Jr.,* of counsel), for respondent.

*Per Curiam.* Defendants appeal from a judgment directing specific performance of an option agreement and execution and delivery of a warranty deed to premises located in the Town of Cicero, County of Onondaga.

Beginning in 1961 plaintiff began acquiring options on properties which were part of a 200-acre site north of Syracuse for the purpose of developing a shopping center. In February and March, 1962 plaintiff's representatives attempted to obtain an option on defendants' premises, which· comprised about 61 acres of the desired site, but without success. On March 2 they were advised by defendants' attorney, Gingold, that a deal had been made by defendants with others. In fact, on that date Gingold, with the authority of defendants, had granted a six-month option to purchase to a Rochester corporation, Westbrook Acres, Inc. Subsequent thereto, on August 14, 1962, defendant Paul Abel himself gave Westbrook an eight-month option to lease which was succeeded by a new six-month option to purchase executed on March 5, 1963 for a consideration of $3,000. This option extended to August 31, 1963 and contained a provision for a six-month renewal for an additional $3,000 to expire February 28, 1964. It also was made assignable by the optionee and on May 13, 1963 the option was assigned to plaintiff by Westbrook. Notice of the assignment was given ·by plaintiff directly to defendants on July 25, 1963, together with a check for $3,000 for an extension of the option to February 28, 1964. Plaintiff did this by dealing directly with Mr. Abel without consulting Gingold.

Nothing further happened until February 13, 1964 when Dwyer, the attorney for plaintiff, was advised that a surveyor was seeking to obtain the abstract of title to defendants' prop-

erty, which was then in the office of a realty firm closely connected with plaintiff, for the purpose of doing a survey on other lands also covered by the abstract. When plaintiff's attorney was unable to reach defendant Paul Abel to determine whether it would be proper to release the abstract, on the following day he contacted attorney Gingold, who had acted for defendants at the time of the original option discussions between plaintiff and defendants in 1962. According to testimony given by Dwyer, he first asked whether it was all right to let the surveyor have the abstract and was told by Gingold that it was. He then advised Gingold that plaintiff would have to either exercise the assigned option to purchase, which would expire at the end of the month, or get an extension of the option, and stated that he had been instructed to find out whether an extension could be secured. Gingold replied: "I don't know, I do not have any authority to give you an extension." Dwyer said that if an extension could not be negotiated plaintiff would want to exercise the option. Gingold commented that he had not been in touch with defendant Mr. Abel recently. Dwyer then acknowledged that he did not expect Gingold had authority to grant an extension but that he knew Gingold had represented Abel at the time the assigned option had been granted to Westbrook and that since there would be a question of consideration involved — Dwyer indicating that, unlike payments made for prior options or extensions, plaintiff would like any future extension price to be applied on the purchase — he thought it would be improper to negotiate with Abel in the absence of Gingold. Gingold however suggested that Dwyer talk to Abel about the negotiation. Dwyer replied that he would prefer to have Gingold talk with Abel and report back to Dwyer whether or not an extension could be negotiated. According to Dwyer, he then reminded Gingold that the option expired at the end of the month and a decision would have to be made whether to exercise it or whether an extension would have to be obtained, whereupon Gingold said: "Don't worry, I will report back to you." He also testified that he had no further conversations with Gingold until the evening of March 3, 1964 when he was informed that Gingold had never been able to discuss with Abel their conversation of February 14 because Abel had been absent from the city.

Gingold's testimony confirmed the fact that he and Dwyer had a conversation on February 14, 1964 and that he had said that as far as he knew it was all right to deliver the abstract to the surveyor. As to the balance of the conversation, his testimony varied in some detail in that he testified he told Dwyer

he did not know whether defendants would give an extension of the option and that Dwyer would have to take it up directly with Mr. Abel because Gingold did not know whether he still represented Abel in view of the fact that he had not seen him since the previous Summer; that he said he would see if he could set up an appointment so Dwyer could approach Abel about an extension and would call Abel; that he never agreed that he would call back Dwyer; that Dwyer talked merely about obtaining an extension and never indicated an intention to exercise the option; that Dwyer at no time told him he was relying upon Gingold to contact Abel and to secure an extension. Gingold testified that he tried twice without success to reach Abel.

The record also discloses that on March 4, 1964 plaintiff learned that Abel was showing the property to others, and on that day authorized Dwyer to exercise the option. When Dwyer informed Abel of the February 14 conversation with Gingold, Abel replied that he had never heard of that conversation until after the option had expired, that he was free to negotiate with other people and had made an appointment to show the property to others. On March 5 Dwyer mailed by registered mail a formal notice to Abel exercising the option and then personally called on Abel and told him that the notice had been mailed. After an extended discussion Abel said other things being equal he would just as soon sell to plaintiff but he intended to get the top dollar for his property. The area had been rezoned in 1963 thereby increasing the value of defendants' property. On March 11 defendants contracted to sell to others who are not parties to this action.

Plaintiff, claiming that an equitable estoppel had been established precluding defendants from asserting that plaintiff's exercise of its option was untimely, commenced this action for specific performance.

The lower court has granted judgment for plaintiff upon a finding that its exercise of the purchase option in March, 1964 was timely and proper. This conclusion was predicated upon a determination that the attorney Gingold was defendants' attorney in regard to the option on the subject realty, that as such attorney he could, in proper circumstances, estop defendants from asserting the expiration of the option, and that defendants were in fact estopped from such assertion under the circumstances shown in this case.

In our view, the record does not permit a judgment for plaintiff founded upon an estoppel, because there was no reliance upon any promise made by defendants and the estoppel is based

solely upon the conduct of Gingold, who concededly had no authority to act for them. Accepting plaintiff's witness' own version of the conversation between Dwyer and Gingold on February 14, 1964, Gingold—even if then defendants' agent— was without authority to extend the expiration date of the option. He said precisely this, and Dwyer acknowledged the fact of lack of authority. In the face of this testimony and the express denial of authority, no conduct on the part of Gingold as agent could effect an estoppel with regard to the expiration date. An attorney's power, as agent, to bind his principal is restricted by his actual or apparent authority (3 N. Y. Jur., Attorney and Client, § 48). "If a third person has notice of a limitation of an agent's authority, he cannot subject the principal to liability upon a transaction with the agent in violation of such limitation." (*Ernst Iron Works* v. *Duralith Corp.*, 270 N. Y. 165, 170; see, also, *Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5.) The effect of the judgment below is to negate the limitation upon attorney Gingold's power, which was stated by him and acknowledged by plaintiff's attorney, and to obtain for plaintiff from Gingold's conduct the very thing which Gingold concededly was powerless to give—viz., a right in plaintiff to exercise the option after its date of expiration. Any conduct by Gingold which in effect would extend the expiration date of the option—whether by the granting of a purported extension or by acts which gave rise to a claimed estoppel barring defendants from rejecting a late exercise of the option— was beyond the scope of his authority, to the full knowledge of plaintiff's attorney.

Moreover, an essential element of estoppel is reliance. (*Lynn* v. *Lynn*, 302 N. Y. 193, 205; *Byrne* v. *Barrett*, 268 N. Y. 199, 208.) In the present case this would mean that plaintiff would have to have relied upon Gingold to keep the option open and exercisable until he communicated back to Dwyer the result of a conversation with defendant Paul Abel concerning an extension. However, there could be no such reliance by plaintiff in face of the knowledge—transmitted to its agent and attorney Dwyer—that Gingold was without power to keep the option alive beyond its expiration date. Defendants are therefore not estopped to deny what Gingold expressly said he had no authority to extend—viz., the February 28, 1964 termination date of the option.

The line of cases stemming from *Imperator Realty Co.* v. *Tull* (228 N. Y. 449) and including *Triple Cities Constr. Co.* v. *Maryland Cas. Co.* (4 N Y 2d 443), cited by plaintiff, is not appropriate to the present action. In those cases, in which

the doctrine of equitable estoppel was applied, the statement relied upon and which caused a change in position was made by a party or an attorney authorized to act for the party.

In sum, the principle of estoppel is not applicable to this case; the acts relied upon as giving rise to this equitable doctrine were acts of an alleged agent who — to the knowledge of plaintiff — could not within the scope of his authority bind defendants to acceptance of a late exercise of the purchase option. If plaintiff wanted to purchase the property it should have exercised the option by registered mail prior to February 28, 1964, as specified in the option, and not waited until March 5, 1964 to do so.

The judgment should be reversed and the complaint dismissed, with costs.

BASTOW, J. P., GOLDMAN, HENRY, DEL VECCHIO and MARSH, JJ., concur.

Judgment unanimously reversed on the law and facts, with costs, and complaint dismissed, with costs.