**GROUP ASSOCIATION PLANS, INC.,**
Plaintiff,

v.

**David COLQUHOUN and Raymond K. Tongue Co., Inc., Defendants.**

Civ. A. No. 2533–66.

United States District Court
District of Columbia.

Nov. 8, 1968.

Earl W. Kintner, Jack L. Lahr, and Lawrence Henneberger, Washington, D. C., for plaintiff.

John J. Ghingher, Jr., Baltimore, Md., and Manuel J. Davis, Washington, D. C., for defendants.

## OPINION

HOLTZOFF, District Judge.

This is an action by an employer against a former employee and the new employer of the latter, for an injunction to restrain the defendants from certain activities in competition with the plaintiff, and for damages sustained as a result of their activities in that regard.

The plaintiff, Group Association Plans, Incorporated, is a large concern engaged in the business of insurance brokerage, specializing in the sale of group insurance plans to nonprofit membership associations and administering such plans. The plaintiff's activities are nationwide. It has a number of offices in different parts of the United States.

The individual defendant, David Colquhoun, was a sales representative, stationed at the plaintiff's Washington office. His duties were those of a soliciting agent, if one may use such a descriptive term. He approached prospects and possible customers, and solicited their business with a view to selling them group insurance plans. In this connection, as the negotiations progressed, he procured offers from insurance companies with specific terms on which they would be willing to write the insurance in question, if the insurance materialized.

From the very nature of the business, each series of negotiations had a tendency to take a considerable time before it was brought to a consummation, if it was brought to a consummation at all. It might last anywhere from a couple of months to a couple of years or more. During that period, numerous conferences between the parties involved were likely to take place until a definite plan was accepted by the membership corporation. After that the individual members of the association were solicited for the purpose of endeavoring to sell individual policies to them based on the group plan. The compensation received by the broker consisted of commissions paid by the insurance company that carried the risk on policies actually written.

In the performance of his duties the individual defendant carried on negotiations with a number of customers or prospects on behalf of the plaintiff. The plaintiff and the defendant Colquhoun operated under a written employment contract, which terminated as of the close of business on May 31, 1966. The plaintiff was desirous of continuing the employment and renewing the contract. The defendant Colquhoun, however, became dissatisfied. He asked for an increase of salary, which was refused. These negotiations were conducted during the month of May, 1966. At the same time, or shortly thereafter, the defendant Colquhoun carried on negotiations with the corporate defendant, Raymond K. Tongue Company, Incorporated, a rival broker engaged in the same line of business, with a view to being employed by the latter.

On May 31, 1966, the defendant Colquhoun precipitously tendered a written resignation to the plaintiff and on the next day was employed by the competitor, the defendant Raymond K. Tongue Company, Incorporated. Instead of discontinuing his solicitation of business from concerns that he had solicited for his former employer, and letting other employees of his former employer take up and continue the negotiations, as was the defendant's ethical and moral duty,

he continued to solicit the business from these prospective customers in behalf of his new employer. In at least three instances, he succeeded in consummating the sale of a group insurance plan to concerns with whom he had been negotiating prior to May 31, in behalf of his former employer. They were National Rehabilitation Association, Society of American Registered Architects and American Educators' Foundation.

This suit was brought to restrain these activities and to recover damages in respect to those negotiations that had been consummated and resulted in sales of group insurance in behalf of the corporate defendant, Colquhoun's new employer. This leads us to turn to the contract of employment between the plaintiff and the defendant Colquhoun. The contract provided that Colquhoun's duties should include sales and services of accounts and such other duties as might be assigned to him by his employer. The contract contained a negative covenant on which the plaintiff relies. It provided as follows:

"It is agreed that Colquhoun will not, for ten years after the expiration or other termination of the term of this agreement, directly or indirectly, as principal or party in interest, or as agent or employe, seek, solicit, or accept any business of or with any person, firm, corporation, association, organization, or group of any kind, which at any time during Colquhoun's employment with the Company, is or was a customer or client of the Company, or any company, venture, or Corporation, owned or controlled by the Company or the Stockholders of the Company."

To put it simply, this was a covenant on the part of the employee, that for ten years after the termination of his employment, he would not seek or solicit or accept business from concerns that were the customers or clients of his employer during the term of his employment.

Negative covenants in contracts between an employer and employee, or between the seller of a business and its purchaser, limiting the latter in future competitive activities are well known. The law deems them valid insofar as they are needed for the protection of the employer or seller, and insofar as they are reasonable, both as to time and area. It is unnecessary to enter into a detailed discussion of these principles of law, because they are well established and have been often summarized and applied. This Court had occasion to discuss and apply this doctrine in a number of cases: Byram v. Vaughn, D.C., 68 F.Supp. 981; Orbo Theatre Corp. v. Loew's Incorporated, D.C., 156 F.Supp. 770 at 777; Meeker v. Stuart, D.C., 188 F.Supp. 272.

In many cases such covenants bar and preclude the employee from competing with his former employer in any way within a limited area and for a limited period of time. In this instance, however, the negative covenant is not as severe or broad as this. It merely bars the defendant from soliciting business from concerns that were his employer's customers during the employee's term of employment. Otherwise he was free to carry on any competing activities in the same line of business as he chose. Because of the limited nature of the restriction and because the plaintiff's business is nationwide, the Court is of the opinion that this restrictive covenant is reasonable, both as to area and as to time.

There is a difficulty, however, in construing this covenant. It bars the employee from soliciting business from concerns which, during the defendant's employment, were customers or clients of the plaintiff. There is a conflict in the testimony as to what was meant in the industry by the terms "customer" and "client". There seems to be a difference of opinion as to whether a prospective customer, who is being actively solicited, should be construed to be a "customer" or "client", or whether these terms are limited only to persons or con-

cerns that had previously done business with the employer, or at least with whom negotiations had progressed to a point where a definite binding agreement had been entered into. This contract was drafted by the employer, and consequently any doubts should be resolved against him.

The Court reaches the conclusion, however, that it is unnecessary to construe or endeavor to apply this negative covenant to the issues of this case, because they are governed by an entirely different principle of the common law irrespective of the negative covenant. There is a common law duty involved. An employee who is in the process of securing business for his employer and works on the matter as part of his employment on his employer's time for which his employer pays him, may not, upon terminating his employment, continue negotiations in behalf of himself or in behalf of a new employer. In a sense he is delivering the proceeds or the fruits of his work for one employer to his new employer if he continues solicitations for the latter. This is such an activity that is clearly a breach of an agent's duty at common law irrespective of contract.

Judge Cardozo, in his usual inimitable style, in the case of Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 62 A.L.R. 1, discussed a situation involving two joint adventurers, where one of them dealt with the property of the joint adventure for his own benefit and without disclosing the facts to his partner. Judge Cardozo said:

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor of the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions."

Although the relation between a principal and agent is not technically that of a trustee and a *cestui que trust*, nevertheless, there is a fiduciary relation between them. For this reason, Judge Cardozo's words are applicable to the instant case just as he applied them to the situation of two joint adventurers.

A leading case in the Federal courts emphatically formulating and applying the same doctrine, is Trice v. Comstock, 121 F. 620, decided by the Circuit Court of Appeals for the Eighth Circuit, in which Judge Walter H. Sanborn, an eminent jurist, wrote the opinion. He said (p. 622):

"For reasons of public policy, founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary relation, has acquired *information concerning or interest* in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services."

A case on all fours, both as to the law and the facts, is a decision of the highest court of the State of New York. Byrne v. Barrett, 268 N.Y. 199, 197 N.E. 217, 100 A.L.R. 680. In that case the defendant was employed as a salesman by a firm of real estate brokers. His employment was oral and terminable at will. In the course of his employment he was working on a project for his employer for the financing and construction of a

building. He had proceeded as far as interesting a prospective customer, who submitted a written proposal. He then resigned from his employment and consummated the transaction in his own behalf as a broker and received a considerable commission. The Court held that the former employer was entitled to a judgment for the amount of the commission that had been earned by his former employee in this manner. The Court said, at page 207, 197 N.E. at page 218:

> "There was not only a breach of confidence after the employment terminated, but a failure by defendant to live up to his duties before that time."

Another similar case, is a decision of an intermediate appellate court in Ohio. Patterson v. Pollock, 84 Ohio App. 489, 84 N.E.2d 606, 608. That case involved an employee who had been negotiating on behalf of his employer for the manufacture and sale of certain office supplies. During the progress of the negotiations, the employee withdrew from the employment and proceeded to continue the negotiations and consummate them on his own behalf. The Court held that the former employer had a valid claim against his former employee.

Still another similar case is a decision of the Supreme Court of Arkansas, in Raines v. Toney, 313 S.W.2d 802.

This Court concludes, therefore, that in continuing negotiations with customers or prospective customers with whom he had been negotiating in his employer's behalf after terminating his employment, the defendant Colquhoun was guilty of a breach of duty to his former employer.

Accordingly, the Court will render judgment granting a permanent injunction against both defendants from continuing and accepting the fruits of the illegal course of action to which the Court has referred, and awarding damages as to the three prospective customers to whom the individual defendant succeeded in selling insurance plans in behalf of his new employer. I refer to the three concerns previously mentioned,

namely, the National Rehabilitation Association, Society of American Registered Architects, and American Educators' Foundation. The measure of damages is the income derived by the corporate defendant, the new employer, from the business done with these three concerns, less the expenses incurred in conducting it. The burden of proving the expenses will, of course, be upon the defendant.

The judgment for damages will run only against the corporate defendant and not against the individual defendant. The injunction will run against both.

A transcript of this oral opinion will constitute the findings of fact and conclusions of law. Either party may submit proposed supplemental findings if they desire to do so.

Counsel will submit a proposed judgment.