## NATIONAL CHEMSEARCH CORPORATION OF NEW YORK

### v.

### James W. HANKER.

### No. 2346-68.

United States District Court,
District of Columbia.

Feb. 12, 1970.

Fred D. Turnage, Washington, D. C., for plaintiff.

William H. Fox, Washington, D. C., for defendant.

## MEMORANDUM, OPINION AND ORDER

JUNE L. GREEN, District Judge.

This action is brought by National Chemsearch of New York, a Texas corporation, engaged, with its parent corporation and associated companies, in the manufacture, sale and distribution of various commercial chemical products

against a former salesman * for violation of covenants in his employment contract, conversion of valuable property belonging to the plaintiff, acts of unfair competition and conspiracy to procure the alleged breaches of contract and to commit the alleged acts of conversion and unfair competition.

## Findings of Fact

1. Both parties, by virtue of the fact that each regularly does business within the District of Columbia, are "found" within the District, thereby vesting jurisdiction in this Court. D.C.Code § 11–521 (1967).

2. The commercial chemical products industry is a highly competitive business, the success of which depends on the marketing energies employed. Sales representatives personally call on purchasing agents of commercial, industrial and institutional users and thereby develop accounts which are thereafter serviced.

3. The commercial chemical products sold by members of the industry vary as to use, but as to each use vary little as between manufacturers.

4. Defendant was hired by plaintiff on July 17, 1961, at which time defendant agreed in writing to sell plaintiff's commercial chemical products in the District of Columbia and Fairfax, Prince William, Stafford, King George, Spotsylvania, Caroline, Orange, Louisa, Fluvanna, Albemarle, Augusta and Highland Counties, Virginia. In that agreement, defendant covenanted not to compete with plaintiff on defendant's own or anyone else's behalf, in the above-mentioned city or counties during his employment, or for one year thereafter.

5. Defendant covenanted not to divulge to others or use to his own benefit, any confidential information acquired during the course of his employment relating to sales, processes, formulae, etc.; and agreed further to do his utmost to further the best interests of plaintiff during his employment.

6. As a consequence of entering into the written employment agreement, defendant became entitled to and received regular draws and commissions from sales and received customer lists, known as route books and various other material used in selling plaintiff's products. The customer route books contained the names and addresses of customers and, where applicable, prior sale dates, amount and type of product(s) bought and the name of the buying agent together with personal data about him.

7. The employment contract was terminable at the will of either party.

8. Defendant was assured that his accounts would be "protected"; that is, the accounts serviced by him within six months would not be serviced by other Chemsearch salesmen, and if they were, the commissions would inure to defendant.

9. Although defendant's sales territory was defined, it was not his exclusive territory. The contract states that defendant was to be "a sales representative" in the assigned territory. That provision carries with it no connotation that the territory was exclusively assigned to defendant. On the contrary, it connotes that defendant was to be "a" representative among several. Defendant's allegation that the contract provided him with an exclusive territory is without merit.

10. On or about June 4, 1968, defendant terminated his employment with plaintiff.

11. Defendant Hanker, while still in the employ of plaintiff, engaged in a course of conduct in violation of the terms of his employment contract and in violation of his fiduciary duty in that:

a. He made sales of plaintiff's products to Management Chemical Corporation (hereinafter Management), a corporation set up by defendant, and thereafter resold these products on his own and Management's behalf to plaintiff's customers.

---

* The complaint was dismissed as to the other defendants upon plaintiff's motion at trial.

b. He concealed the true nature of Management by representing it to be an ordinary customer and by placing on plaintiff's sales order form in the purchasing agent's block, the name of the purchasing agent of the ultimate customer. In this manner defendant was able to record to whom the shipment was ultimately destined and at the same time, while using plaintiff's products to which his various customers were accustomed, acclimate them to dealing with Management. Defendant's version of why this procedure was used is unconvincing to the Court.

c. He used technical knowledge gained as a result of his employment to order, from another manufacturer, products to his specifications, which specifications were similar or identical to Chemsearch product specifications and sold said products on behalf of Management.

d. He used for his own benefit and that of Management the route books that were the property of plaintiff and did not return them. Additionally, he has failed to return all of the sales devices and records belonging to the plaintiff since the termination of the contract.

e. He operated Management in competition with plaintiff.

f. He solicited sales and made sales in his former Chemsearch territory and to customers he served for plaintiff.

12. Defendant's counterclaim has been examined and is without merit.

## OPINION

### The Covenants

█ The contract that is the basis of this law suit provides that it shall be interpreted in accordance with the laws of Texas. There appears to be no reason why the intent of the parties should not be honored since enforcement of such covenants, insofar as they are reasonable, does not offend the public policy of the District of Columbia. Cf. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

Apart from the fact that defendant has covenanted not to engage in certain activities, some of the activities are enjoinable in the absence of any covenant as a breach of an agent's fiduciary duty at common law irrespective of the employment contract. Group Ass'n Plans, Inc. v. Colquhoun, 292 F.Supp. 564 (D. D.C.1968)

█ The covenants are valid insofar as they are reasonable as to time and area, are needed for the protection of the plaintiff and were intended and agreed upon by the parties. Clearly the time limit specified of one year is reasonable. Group Ass'n Plans, Inc. v. Colquhoun, 292 F.Supp. 564 (D.D.C. 1968). Orkin Exterminating Co. v. Veal, 355 S.W.2d 831 (Tex.Civ.App. 1962). Plaintiff entrusted certain of its accounts to defendant. Were he allowed to try to continue servicing those accounts uninterrupted he would likely succeed, as he in fact has. Insofar as defendant's non-exclusive territory was set out in writing in the contract, restrictions covering that area are reasonable in that they cover only a limited amount of territory, which territory defendant was presumably able to cover. However, it is unreasonable to expand that territorial restriction beyond what was agreed upon in writing. Although the written covenant and permissible sales territory applied to certain enumerated counties in Virginia and the District of Columbia as well as such other territory as may be agreed upon between the parties, the Court in its exercise of discretion, declines to include any territory not specifically included in the written contract.

█ In any injunctive action, equities must be balanced. In confronting the question of whether defendant should be totally barred from selling and soliciting within the territory set forth in the contract, the Court considers that defendant's bad faith bars him from any right to sell any chemical product similar to

that sold by plaintiff within the territory.

█ Further, plaintiff has a legitimate interest in protecting its accounts within the territory. Defendant has shown, in the words of Judge Lord, "an uncommon interest in the trade of [his] former employer." Certified Laboratories of Texas, Inc. v. Rubinson, 303 F. Supp. 1014 (E.D.Pa., Sept. 10, 1969). In a business that depends on customer servicing, good will is paramount and it chiefly attaches to the salesman rather than to the company or to the product. Thus, defendant had no right, while an employee of plaintiff, to surreptitiously transfer that good will to himself and has no right now to continue his efforts.

### Other Contentions

All other contentions of both parties have been considered and are hereby denied.

### Damages

a. Plaintiff has established that the sales paraphernalia furnished defendant were not returned, thus entitling plaintiff to $500.00 liquidated damages.

b. Plaintiff has established that defendant made sales on behalf of Management while still employed by plaintiff and that after termination of his employment he continued to make sales to customers who had been customers of plaintiff (the term "customers" is herein defined as those to whom sales had been made) and additional concerns within the District of Columbia and the aforementioned counties of Virginia. Plaintiff is entitled to an accounting with respect to all such sales and the case is hereby referred to the Auditor for such purpose. During the period while defendant was still employed by plaintiff, the measure of damages is gross income to Management less payments made to plaintiff on those orders. During the period following termination of employment the measure of damages is the gross income derived by defendant less the expenses incurred in conducting that part of the prohibited business.

The burden of proving the payments to plaintiff and the burden of proving the expenses are on the defendant. The judgment for damages will run against James W. Hanker individually, and trading as Management Chemical Corporation.

### ORDER

In accordance with the above, it is by the Court, this 12th day of Feb. 1970,

Ordered that:

1. The Court Auditor compute damages and render an accounting in accordance with the above instructions; and,

2. Defendant return all route books and other property supplied him by plaintiff; and,

3. Defendant be and hereby is enjoined for a period of one year from this date from:

a. directly or indirectly, for himself or in conjunction with or on behalf of other persons, corporations, firms or partnerships, selling, offering for sale, or soliciting the sale of disinfectants, soaps, cleaners, chemical specialties, water treatments, insecticides, degreasing and sanitary supply and floor maintenance materials and equipment or any other product serving the same purpose as any product offered for sale by plaintiff during the period July 17, 1961, through June 4, 1968, such injunction to apply to the District of Columbia and Fairfax, Prince William, Stafford, King George, Spotsylvania, Caroline, Orange, Louisa, Fluvanna, Albemarle, Augusta and Highland Counties, Virginia, and also to apply to any customer in any other territory to whom defendant made sales within the six months ending June 4, 1968; or

b. directly or indirectly, engaging in or entering the employment of or acting as a sales agent or broker for the products of or as an advisor or consultant to any persons, firms, partnerships or corporations engaged or about to become

engaged in the manufacture, distribution or sale of disinfectants, soaps, cleaners, insecticides, water treatments, chemical specialties, degreasing and sanitary supply and floor maintenance materials within the aforesaid area and to the aforesaid customers; or

c. divulging to others or using for his own benefit any route books, customer lists, sales or product information obtained during the course of his employment by plaintiff relating to sales, formulae, processes, methods, machines, manufacturers, compositions, ideas, improvements or inventions belonging to or relating to the affairs of plaintiff, its subsidiaries, affiliates, successors or associated companies.

4. Defendant be assessed court costs and Auditor's fee.